Case number 24-5205, KalshiX LLC v. Commodity Tutors Trading Commission, Appellants. Mr. Schwartz for the appellants, Mr. Roth for the appellate. Morning, your honors. Rob Schwartz on behalf of the CFTC. The district court granted summary judgment in favor of the plaintiffs, Kalshi, based on what my friends call an event-focused reading of the statute, which for the sake of brevity, I'll call section 5C. We're asking the court to apply a text-focused reading of the statute and to vacate summary judgment and remand for further proceedings. To build and maintain a thriving derivatives industry that is distinct from the gambling business has been the work of 175 years, and it's important. The statute, section 5C, is a part of that. And the reason we're here today is because federally regulated exchange has turned itself into an online casino for betting on elections. The question for the court, though, is not whether that's right or wrong, but whether the CFTC can even evaluate that activity. The text of section 5C clearly says that we can. It says that the commission may review agreements, contracts, or transactions that are based on an event. If the agreements, contracts, or transactions involve one of a list of activities, including gaming or activity that violates state law, the election contracts qualify if you consider them as a whole, like the statute says, rather than focusing on one isolated feature that has no basis in the text, as Kalshi wants. I'm going to offer the court three propositions. First, on what it means for an agreement, contract, or transaction to involve in activities. The parties agree on what the word involve means, that it covers a range of relationships, and that it keeps its ordinary meaning in section 5C. That ought to be the end of the matter. But what Kalshi argues is they are not asking for a different meaning of the word involve. They're asking for a different reading of the word involve. Proposition number one is that those are the same thing, and there is simply no way to read this sentence the way that Kalshi is asking the court to apply it. Second, on gaming. Kalshi knows it can't confine gaming to betting on things that are called games, otherwise you miss things like fights and races. So what they've done is they've come up with a definition by which the gaming is something done for diversion or amusement, and that serves no commercial purpose. Proposition number two is that their line is arbitrary and unworkable, and the commission has to analyze the economics of the contract at the second step in the public interest analysis. So in context, the word gaming makes a lot more sense here if it's understood to include as a gatekeeping matter things like betting on contests, with the understanding that the commission still has to evaluate the economics of the contract at step two. Mr. Schwartz, I'm interested here. So in addition to the list of things that the CFTC can regulate, including gaming, it can regulate, it can use its authority to reach similar activity determined by the commission by rule or regulation to be contrary to the public interest. So could the commission have used that authority to do a general rulemaking to prohibit this type of, to prohibit the type of contracts that Calshi has? Yes, but some context is important there. We discussed in our briefs. And why hasn't it, you know, because they don't have to sort of wedge it into gaming. Right. We discussed in our briefs a 2012 order about an exchange called NADEX in which the commission made the same holdings, if you will, about congressional control of contracts. And then it was a settled issue for a decade. Nobody tried to do this again until Calshi arrived. And now we're in a bit of a difficulty because the district court whiffed on what the meaning of involved is. So we would have to contend with that in a rulemaking. The commission proposed one, but at this point we needed the district court reversed in order to move forward. I believe that there is a path forward on rulemaking, but the district court really threw a wrench by misinterpreting what the word involved means. If we concluded that the commission can't regulate this as gaming, if we were to conclude that, would that foreclose the commission's ability to promulgate a rule that this was a similar activity to gaming? Because if it's not gaming itself, could it be a similar activity to gaming? Yes, it could be a similar activity to gaming. Even if it's not gaming? Even if it's not gaming. Because the purpose of this is that the function of the contract is gaming. The function of the contracts would be betting on elections in much the same way. So, and this is phrased various ways in the briefs and in the order, but that's the bottom line. If it were determined to be a similar activity because of those similarities, and they have a lot of line drawing problems here in between things that they admit are gaming and things that they claim are absolutely not gaming. So, for example... The district court found that you have the biggest line drawing problem, which is that if gaming really does mean gambling as you've defined it, then basically every event contract would fall within the special rule, not just certain ones. Right, that was incorrect because the commission cited a variety of sources, including dictionaries, that have broad definitions, but that is not what the commission relied on in this case. The commission held specifically that these contracts are gaming because they involve betting on a contest of others. That's the holding. So, the fact that there may be hypothetical contracts possible that would be within a dictionary definition of gaming is not relevant to the question for the court today. Well, you say that the definition of gaming is betting or wagering on a contest of others. Is that your definition? It includes betting and wagering on a contest of others, but the commission did not promulgate, as though it were a legislative regulation, the commission did not promulgate a rule defining the outer bounds of what these terms mean, and it didn't have to. I mean, that's just basic APA. Agencies should not do things like that. If you're going to issue a comprehensive scheme for regulating something, you're supposed to put it out for notice and comment. We have a requirement to do cost benefit analysis. So, what the commission did was to consider the facts before it and nothing more. And I do want to point out that they've been saying something that's not true about the order. They've been saying that the commission defines gaming to mean betting on contests and nothing more. The commission did not do that, and I expect that there are other things that may fit the bill. I'm not here to announce any kind of new policy on the part of the commission, but if it were a game, even if it were a one-player game, I think the commission would have a strong argument that a contract on that smart kid in Oklahoma will he clear 2,000 lines at Tetris was a gaming contract. That would be something they would look at at the time, but it's absolutely not true that the commission defined gaming to mean betting on contests and nothing more. So, if you look at the statute defining event contracts under the special rule, it says that they're agreements, contracts, transactions, or swaps in excluded commodities. So, by definition, all of these things are excluded commodities, right? Correct. Does the definition of excluded commodities help us at all? Recall that that definition is an event that's beyond the control of the parties to the contract and that has financial, commercial, or economic consequence? Yes, I think it puts these events squarely within the definition of excluded commodity, but then, of course, the commission has to go on to apply these individual. So, then it goes on to say it involves, and then there's Roman 1 through 6, and 6 is the one that says other similar activity, which isn't an issue here because that requires a separate rulemaking or action that didn't happen, but it seems to me that 6 is relevant because it says other similar activity, meaning that Congress must have thought that there was some way that we would be able to discern what is similar to items 1 through 5, that there must be some characteristic that is common in 1 through 5 that we can identify and discern, and then we would know what would be similar activity to that. So, what is that? What is similar activity? What is that characteristic that makes 1, 2, 3, 4, and 5 similar to each other and that we could latch on to to determine what else is similar to Yeah, I mean, it could be similar to any of the enumerated activities. So, if it's similar to war, it could be, which is kind of hard to define, but it may make sense for the commission to say, well, look, an overt hostile act by a country short of war is a similar activity to that. Gaming is broad. I mean, that's the fact of the matter, but it's broad enough, no matter what, to capture context of others. Again, it makes more sense at the gatekeeping stage. The reason that their definition is unworkable is because we submit that Congress couldn't have intended the commission to perform the kind of commercial purpose analysis that they're insisting has to be performed at step 1. And I want to give you an additional bit of context. The court may recall that these contracts were submitted to the commission under something called self-certification. Under self-certification, the exchange can list something almost immediately following business day. It's implausible that Congress could have intended the commission to analyze the commercial use of a particular supposed financial product overnight like that and sort of drive by fashion if it wanted to address the issue before the contract was listed. So analyzing the economics of the contract has to be done at step 2, and it must be done at step 2 because the public interest, any public interest analysis is necessarily going to give high importance to the economics of the contract. And in fact, isn't that really the only thing that the CFTC is particularly expert in? If Kalsi's reading is correct, that the enumerated categories refer only to the underlying, and therefore that the residual category, Roman sex, requires the commission to identify categories of underlying that are similarly contrary to the public interest, then I mean, then the CFTC would be making determinations of what kind of real world activities as distinct from what kind of then contracts would be contrary to public interest. That's like a very strange role to assign to the commission. Ex ante it is, and Kalsi has never explained another district court for that matter. Again, how it is possible to read this sentence to mean that involve requires the relationship between the underlying and enumerated activity, and it's not possible. And the fact of the matter is that there's no canon of construction that can get you out of that box. Canons of construction always have to lead to a reading of a sentence that is possible. Theirs isn't, and I will hasten to add that we did follow the consistent meaning canon. It is the meaning of involve that they agree is the meaning of involve, the American English meaning that captures a variety of relationships. But your meaning of involve just ends up with us, like a dog chasing its tail. If involve gaming means that the event contract itself is akin to gaming, then that means that every single event contract falls within the special rule. No, I disagree with that. Again, the commission did not say that, it did not adopt a definition like that. All that it said was that it was looking at contests of others, and this is important. My friends also rely on the trading in their interpretation of gaming. They admit at least one narrow part of this that Congress was concerned with, including sports betting inside the scope of the statute. Well, the only relationship between an NFL game and gaming is the betting. So they have been chastising us for looking at the trading of the contracts, but they do exactly the same thing. And if Congress had written the statute so that the underlying event has to relate, it would not have captured those exact things that my friends are. I'm not sure I followed that. I think under there, under the district court's reading, gaming involves a game or putting stakes on a game. And so if it involves a game, they're saying, yeah, well, the underlying is Super Bowl. Yeah, a separate issue, right? That is about what is gaming. No, no, no. There's a lot mixed in here. Concerning what is gaming, that's their argument. It has to be something that's not called a game. But in terms of what involved means, the Super Bowl is not gaming, which they admit, the district court sort of hinted that it believed that football was gaming, which I don't think they don't defend that. I said gaming is playing a game. The Super Bowl is a game. So it falls squarely within the district court in dictionary definition. I think, respectfully, sir, you started out by saying the district court whiffed. I would caution you to consider your tone. I apologize, your honor. Coming up with a word in the heat of the moment, I pulled up that one, but you're correct. The district court mistook. So I want to catch your argument that you say culture also relies on the transaction. The Super Bowl is a game, but they acknowledge that betting on the Super Bowl is covered under the special rule. And to do so, you say they have to rely on involving a transaction involving being the event contract, not the underlying. Drive that home for me. I'm not quite getting it. Okay. We're all in agreement that the Super Bowl is not gaming in and of itself. It's game. So if you are going to say that the Super Bowl involves gaming, the only way that's so is because of the wagering on the Super Bowl, which is the same connection as the connection between elections and gaming. It's the betting. So Congress, it could easily have said, it could easily have written the event-focused interpretation, the event-focused reading by saying an agreement, contract, or transaction based on an event that involves the enumerated activities. But it didn't. And for the reasons we're discussing, it would have failed to capture about the only common ground here that we have, is that Congress was trying to cover sports betting. Mr. Schwartz, I guess I wonder whether it really matters what gaming means in this context, or whether it really just all turns on how we understand involved. Because if involved is limited to the underlying thing, then clearly an election is not a game. And it is, an election is not prohibited by state law. So, and if involved has the broader meaning that the CFTC says that it does, then, you know, well, then, you know, possibly it does. So like the CFTC, I mean, if it can't show both its meaning of involved and the meaning of gaming, it loses. So it seems the first step is essential. And I'm not sure why, and I'm not sure how the CFTC gets past that first step, because, you know, for some of the reasons that Judge Wilkins mentioned, which is that if this kind of contract is gaming, then every kind of trade, you know, every kind of event contract is a game. I mean, it's sort of the essential nature of what that is. If we're correct on what the word involved means, and that you can consider the purpose of the contract or what the trading entails, the only thing that we've captured here is betting on contests. The fact that we cited a dictionary that includes, I mean, courts do this all the time, right? And I think sticking to the text here is particularly important. And I'm thinking of the activity. Your definition of involved is that it amounts to gaming, right? So betting on an election outcome amounts to gaming. That's one of the definitions. That's one of the definitions, right? I think that's the one that does all the work for the CFTC. Entails relates to, I'm sorry. Right. Entails relates to, but if that's true, then every event contract on anything, you know, would fit into that category. No, I don't think that's correct. I mean, we're interpreting 5C here. We're not applying the dictionary or any particular state statute. As far as the order goes is that betting on contests is gaming. So I disagree with that. And I think it's particularly important to stick to the text here. I mean, the canon of construction I think is significantly more important than the consistent meaning canon, which doesn't get them anywhere, is the canon that when you have, but when a court interprets a statute, that if before a court interprets a statute, that's going to significantly encroach on traditional state police powers. And here we're talking about the authority to regulate their own elections and to protect them. The court has to be absolutely certain. But what Kelshi is asking for here is to actually edit the text to get them there because there is no textual basis for their interpretation. Well, they're coming up with a reading. If we, we don't have to decide the meaning of gambling to rule for you, do we? If we accept your understanding of involved in a public interest review, and we think, and we accept that event contracts based on elections are contrary to state law, then that allows the commission to do a public interest review. Correct. Now the big, it seems to be the big stumbling block there for you is the bucket shop laws. And I noticed that there's express preemption in the statute. It's a little unclear to me what the scope of that is. Kelshi said, I think in a comment that it thought that the bucket shop law was to the extent that they would apply to on exchange trading are preempted. So transactions that involve on exchange trading. So there's two different preemption arguments. There's an express preemption argument, and I guess there's a conflict preemption argument. And I'm trying to focus on the express preemption argument, which I thought Kelshi itself made in its comments. And I understand the argument also in the briefing that once something is on an exchange, that that preempts contrary state law with respect to those products. But putting that aside for a moment, I'm interested in a more express preemption argument. And I'm interested in whether the commission has a position on that. I don't think the commission has said that. And if they make the argument for me, I appreciate that. But I don't think the commission has said that these sorts of, that they're really gambling laws that apply to betting on any contingency. And they're sort of mistaken about how the analysis works procedurally between an adjudication and a rulemaking. I find your argument that this is just an adjudication, so we don't have to account for the implications of the special interpretation that we're relying on deeply unsatisfactory. I mean, there may be provisions that don't have to be decided in this case, like what exactly is the scope of category six, or if we didn't rely on gambling, what exactly is the scope of that. But when you're relying on a term and the construction that you give it is problematic, I do think that's something to be cast aboard. So I have another question about the, well, the bucket shop laws, your best argument with respect to that. So one thing strikes me is nobody contends that Congress in the special rule meant to subject all event contracts to public interest review. Nobody thinks- Not as a permanent all circumstances matter, but I think an exchange would have, so say tomorrow the states repeal these laws, then they don't have any illegal activity problem. But you're at a point in time, and we were in 2023- They have been repealing them because they're really artifact of a different time when the entire project of event contracts was seen to be question of all. But given that there are bucket shop laws and given that Congress was focusing on activity under state law, I guess the question is, does the structure, this is a helpful question. Yes, thank you. Does the structure and the scope and the whole project of this special rule indicate, no, we're not asking the CFTC or authorizing the CFTC to do a public interest review on everything that has a structure of an event contract. We are trying here to make sure that CFTC is acting carefully where it trenches on issues that states have legislated in areas of their traditional concern, elections and gambling. I mean, a lot of states have laws on these matters. So isn't that one way to read the contrary to state law is A, no, bucket shop laws are just not covered because they're contrary to the whole structure of the thing as focusing on of event contracts. Put that out of the way and it seems like you're home free. Yeah, I agree with that as well. I think the point is made in the briefs, perhaps not as clearly as we could have, but that is probably not the concern that Congress had here. And you don't have a position on whether the express exemption provision preempts the bucket as I think as written, it applies to all exchange transactions. So if we accept your definition of gaming as betting on a contest of others. So I think there's some discussion in the briefs about whether that means it's limited for the purpose of entertainment or not. You would say that it doesn't matter whether it's for the purpose of entertainment or not. So that it could include the contest of others, i.e. elections, even though elections aren't for entertainment. Correct. This is where I was going to get into their line drawing problem. If we agree that betting on sporting events is covered, why not betting on the ESPN, ESPY awards? And if that, why not the Grammys or Times Person of the Year or who wins a debate or the popular vote versus the electoral college or most pertinent here, the house national popular vote versus control of the chamber. And if Cal, she believes that house national popular vote, for example, does have a serious commercial purpose, they can come in and make that argument. But our position is that it can't be that Congress intended us to make that judgment essentially overnight at step one. Why isn't the line drawing that Congress meant betting on contests of others in the context of games and those sorts of contests, and that would cover things like boxing, football, basketball, et cetera, but not elections. We're going off the plain meaning of contest here, which we've cited a definition where entertainment isn't until the third or fourth. Generally, contest means a struggle for some sort of end. Oscars or billboard charts, those are competitions, contests? I would say so. My friends are going to stand up and say that we have all kinds of contracts like that and the CFTC never did anything about it. But that is, of course, not an indication that we've ratified anything like that. But yes, I would absolutely, there's a strong argument that those are contests too. Isn't a war contest? Well, I think if you have an express provision for war, then that is where that sort of contract belongs. And there's overlap here, right? I mean, if you look at illegal activity, assassination and terrorism are illegal activity, but there's overlap there. So even to the extent a war could be characterized as a contest, I don't think that is dispositive of what gaming means. I see that I'm well out of time. I'll give you some time for rebuttal. Good morning, Mr. Roth. Good morning. May it please the court, Yakob Roth on behalf of CALSI. Your honors, Judge Cobb got this right. The commission's interpretations of the statute are untenable and lack any meaningful limiting principle. I certainly understand the policy arguments both for and against illicit collection prediction markets. But the question here is, did Congress empower the commission to prohibit them? What are the policy arguments that you understand on both sides? Well, the policy arguments aren't actually presented in the appeal. I appreciate that. I'm just interested in your view because it relates to the, what you think Congress realistically was up to. Well, what I think, I'm happy to answer. I mean, what I think Congress was up to, we have to look at the categories of activities that it carved out and said, these are the types of contracts we want the commission to be able to review. And that's the meat of this appeals. We'll get to it. But the policy arguments in favor of election prediction markets are twofold. One, they serve legitimate hedging and economic needs. And two, they advance informational value for the public. But again, that goes really- So what the, whether Nate Silver is right about his prediction on an election serves what kind of hedging or information forcing values? Well, your honor, that's not the contract that's at issue in this case. So that's not the contract where we have any record developed on the economics of it or the purpose of it. So that's what you're talking about? No, not here because that's not what this case is about. But if they want to try to draw a line between that contract and the ones here, they can try to do that. They haven't. Contracts here are about congressional control and there's a large appendix that talks about the hedging purposes of that contract and the informational value of that. But again, the only issue that's actually here is, are these contracts within the narrow enumerated categories of contracts that Congress empowered the agency to look at? And I'd like to go through those, the two that the commission relies on and try to explain why their interpretations are not- Can we first talk about the word involve? So I find the consistent usage argument to be a bit weak in this context because the word involve, sort of by its very nature, changes its meaning based on the object that is involved. And I think the Clark case from the Supreme Court that talks about this in a similar context is distinguishable because I think the categories here are really quite different categories. There's some things that are very specific like assassination and there's something like gaming, which is arguably not, you know, it's not, there's a lot of disagreement about what gaming includes. Probably not a lot of disagreement about what assassination is. So what is your best argument for your reading of involve that doesn't involve the consistent usage case? Which I think is, you know, a nice label but not- Yeah, fair enough. And I understand the point. I think it's actually more helpful to talk about the categories in conjunction with involve because actually for gaming, and as this came up in the first half, for gaming I'm actually not sure the involve does a lot of work because as the district court explained, gaming under the at least one dictionary definition means playing games or putting stakes on games. So it kind of captures both the underlying game and the whether an election is a game. An election is not- That's our point. Right. That's our point that there has to be under that definition of gaming, putting aside involve, under that definition of gaming, which is the dictionary, sort of standard dictionary definition, playing games or playing games for stakes. Under that definition of gaming, these contracts are clearly not covered regardless. Because if the CFTC is correct that a contract that involves gaming amounts to gaming because it's like betting on the election, then the work that's being done is involved. I don't think so, Your Honor, because there's still no game. So our point is for gaming, it all rise and falls with gaming because our point is- Because I think the argument of CFTC is that the gaming, they just claim the notion that the is the game. The gaming is trading an event contract, a transaction- So it all goes back to- That amounts to gaming because it's betting on an election. Right. And so they are interpreting gaming to mean gambling and gambling to be broader than games. That's how they get to this. Well, yes. Gambling. And our point is that can't be right because if you take the, there are two definitions of gaming in dictionaries and other sources, the narrower one, which has a game focus and needs to be a game, and then the broader one, which is just betting, gambling. Problem with the broader one is if that's your interpretation, it covers everything by definition. So here's, I totally understand that argument. And I think that it's, you know, that the CFTC has really struggled with this. But, and even if, which I don't, you don't accept the Lincoln-Feinstein colloquy as in any way binding or, you know, post. But even without looking at that, it seems to me quite commonsensical that the Congress was thinking, we have event contracts, we have an exchange, which is a regulated exchange that is about certain kinds of commercial activity that have proved to be beneficial to commercial life. And then we have other kinds of event contracts that are really frivolous, that are recreations. Who's going to, you know, be on time cover person of the year? Or who's going to win the Oscars in the soundtrack category? Who is, you know, going to, which of these, you know, famous celebrities being divorced first? I mean, these are event contracts that are really different from others and not a bright line. I grant you that. But where Congress is thinking, we don't want this exchange, which has its own competency that relate to markets and finance and hedging and, you know, price, information, information to become a casino. So we're going to say gaming is something that they, you know, transactions that amount to gaming are off the table. So I get it that there's a really tough textual problem, but it seems to me most plausible that that's what Congress was about. So Your Honor, what I would say to that is, I understand exactly where Your Honor thinks the might be for gaming versus not gaming. Or at least you've articulated a principle to try to distinguish gaming contracts from all other event contracts. The problem is that is not their argument. That has never been their argument. And he stood up here today and affirmatively disclaimed that argument and said, we can't make any determinations about commercial use or purpose at step one. That's all the public interest inquiry at step two. And they've said that from the order to the district court, to their argument on their opening brief on appeal. So if the test for gaming, it doesn't have, you know, if Your Honor is suggesting that the test for gaming might ask, what is the economic purpose? They have abandoned that like three times over and affirmatively said it's not their position. I think the reason for that is that as we explained in the briefs, it's actually a hard way to do it because every event contract, even the most economically significant event contract can be traded for speculation and is often traded for speculation. The liquidity market is provided in part by people who are fairly galling and don't know what they're doing. So then in order to make it work, you need to ask a question like, well, how often, you know, what is sort of the balance or dominant? What that policy says is anything that's sort of predominantly for recreational gambling. So I get it that the CFTC has claimed making a public interest determination in interpreting the statute, but really that's the whole project. What is the subcategory of event contracts that raised, you know, the sort of in the neighborhood of which there may be public interest concerns and that therefore it's worth doing public interest review of? So there is a kind of rough draft sense that what precisely what the special rule is, is identifying categories. Maybe a lot of activity is perfectly constructive, but, you know, like things that state laws, you know, render illegal, you know, CFTC is not going to be driven by all of that, but it wants to give a public interest look-see to what underlies that. Are they out-of-date bucket shop laws that nobody's bothered to take off the books or are they raising real concerns about the standing of elections in their citizens' mind? Right. So, Your Honor, this idea of predominant use is the predominant use for hedging versus speculation. That was their test public interest. It was their public interest inquiry before the year 2000 when Congress amended the law. So previously, they always had to analyze public interest at the front end and what they would ask is, is the predominant purpose economic or non-economic? Congress repealed that. If we now read gaming to mean the same thing, we're just going back to the pre-2000 regime because it means at the front end for every contract, they're going to say, what's the predominant purpose of this? Is it economic? And if it's economic, then we can review it for public interest at which point we're going to ask the exact same question again. I think that's the reason they have never made this argument and I don't think it's a basis to uphold or to reverse the district court in light of that. But I'm saying that it explains, it's part of the understanding of what's in or out and that there is a part of why perhaps sloppily Congress put gaming in there is because really for the Congress, I mean, there aren't really that many contracts on assassination or... Well, there are overseas, I think. Right, but on a US market.  And so in a way, they're really trying to perhaps artlessly, they're saying, look, we're going to give TTC the power to look and pick out things that it thinks pose that kind of risk. Your Honor, I think there's... You can make your case and you may win your case. I think there's something to that, but the way I would understand it from the statute is that the way Congress did that was by capturing out this category, gaming, in our view, something relating to playing games and said, well, that category, that's highly unlikely to have real economic significance. Why wouldn't five then be sports or casino games? Why wouldn't they just said that rather than gaming? I don't know, Your Honor, but gaming, games generally, I mean, made a comment about our definition of games. It's the dictionary definition of games is something you do for amusement, entertainment, diversion. So it captures all of this and... Congress often uses gaming in a broader sense to mean gambling. I mean, it's sort of a... I'm not sure that's true. I mean, the Indian Gaming Regulatory Act is the statute that uses the term gaming and it refers to casino games, to blackjack, to slot machines, and to horse and dog racing. I mean, that is kind of what we're talking about. Those are games. Those are things you do for amusement. I mean, don't a lot of Indian casinos have sports betting? And we agree with that too, because sports are games. Football game is a game. And gaming commissions. I mean, gaming commissions are gambling regulatory committees.  So gaming, I mean, I do think there's a very strong case that gaming does mean gambling. And then the commission runs into this problem that at least in your mind, everything that your clients do in the event contract space is gambling. And I think understandably, CFTC says, um, no. And I think understandably, Congress may have been thinking, no, there are event contracts and then there's gambling. Right. And I agree with all that. And they don't push the broad definition. I mean, they don't really push the broad definition of gaming, i.e. gambling, i.e. all wagering, because they know it's completely untenable. The problem is there's no in-between for which they can provide any legal source that actually works. The narrower definition, which is found in every dictionary, is what the district court adopted. And we're not covered by that. The broader definition they agree is untenable. So they settle on this. Well, they're going to do two things. First, they say, we don't need to draw a line because this is an adjudication. That's completely wrong. It's a statutory interpretation. They need to give a definition in order to justify their conclusion. These are gaming contracts. And then they say, well, contest is in, we don't have to decide anything else. But that doesn't come from anything. There is no dictionary definition of gaming that says contests. They either say games or they say everything. They're just pulling it out to get to the result they want here. And it's not even a test with any policy sense. It doesn't track your honor's insight into the economic purpose, because there are lots of contests that have great economic significance. And there's a ton of stuff that has zero economic significance that is not a contest. You're requiring a little bit. You're really putting the court that part before the forest by saying that they have to know in effect at the threshold that everything that's in one of the categories, one of the numerator categories is in all circumstances. That'd be something that having an event contract with respect to is contrary to public interest. And I think they're saying, you know, gambling, they clearly meant gambling. Gambling in its broadest sense would cover every event contract. We're not there. We don't want to be there. We don't have the resources to be there. It would be pointless to be there because a lot of event contracts will just come in and show us the public interest case and we'll be great, you know, list. On the other hand, they're saying, you know, assuming that as a formal matter of, you know, definition that gaming does mean gambling, then the heartland of it, they say, is gaming in contest of others. And you're out of there pulling the content. The word contest that they're pulling is coming from some state gambling statutes. We're in context. It could not be any clearer. They are not talking about elections, just like they are not talking about corporate board contests and they're not talking about market share contests. They're not talking about lawsuits, things that can be colloquially described as contests. That is not what those statutes are talking about. They refer to things like contests of chance or speed, skill and endurance of human or beast. I mean, when you read these things in context, it is abundantly clear elections are not what they're talking about. The district court recognized this too in the context of the federal statute that they cite, which talks about sports, contests of chance or games of chance and contests. You look at those three things together, they're not talking about elections. And that's where they're getting the word contest because it's not coming from any stat, from any definition. Betting on sports, betting on games of chance, betting on contests. I'm not sure if that were what the statute said. I think they'd be in pretty good shape on betting on contests. But let me actually, so putting aside, if you win on gaming, you still have to win on- Oh yeah. Unlawful under state law. Yeah, I'm happy to switch to that. And unlawful under state law, it seems to me your argument, your whole argument is about the bucket shop law. Am I wrong? It's about, excuse me. The bucket shop law. That is a big part of the argument. It's a big part of the argument. Yes, because it, do you want me to flush that out a little bit? I mean, they say when the statute asks, does the contract involve unlawful activity? That means does trading the contract off an exchange, would that violate state law? And under the bucket shop statutes, every event contract, if it's traded off an exchange, would violate some state law. Not every state has these, but lots of them do. And so our point is, that's what tells us that they are focused on the wrong thing. In order to make this really work in context, the inquiry needs to be, is the subject matter of the contract related to unlawful activity? Just like the analysis is, does the subject matter of the contract relate to war? Does the subject matter of the contract relate to terrorism? Does the subject matter of the contract relate to assassination? If you read those four things together, that's what the statute is trying to get at. It's looking at the underlying event and asking, is there a relationship between the underlying event and the enumerated activity? Because we don't want people profiting from war. We don't want people profiting from terrorism and we don't want people profiting from crime. So it makes perfect sense when you read it that way and you don't walk into this problem of swallowing rule, swallowing all the other exceptions and rendering this not superfluous. Your Honor asked about- To me, I think the problem for you with that argument is if I just look at this statute at the 10,000 foot level and I see, well, there's six different categories. There's a catchall, other similar activity, but the first five, they all seem to be, as you just said, things that Congress would have thought that just as a matter of public policy, we don't think that people should be trading and profiting off of whether someone is going to commit a crime or not, whether an act of terror is going to occur, an assassination or a war. So I think then that supports kind of the CFTC's view that gaming means gambling because that is something that states and Congress have traditionally wanted to regulate and minimize and might want to regulate here. And gambling is one of the very common, and in some dictionaries, it's the first definition of game. And so I take your point that gambling is broad and then that might swallow up the whole statute. But if you're just kind of looking at this as what was Congress's purpose, it would seem that what Congress's purpose is more likely that they were concerned about gambling than whether who's going to win the just as a game. Well, Your Honor, the legislative history is exclusively about sports when it talks about gaming. So I think there is a reason to believe Congress was particularly concerned at the time it enacted this statute about sports betting and that that was probably what they were getting at with the word gaming. Certainly Congress was aware that state laws had these bucket shop statutes that if taken on their face would prohibit all sorts of derivatives contracts and futures markets. And that's been true for a very long time, decades. I mean, Justice Holmes talked about this in that case that we cite in the brief. So I think it's pretty clear Congress was not trying to cover the waterfront because we have these markets. They're supposed to cover something. And if you read gambling in its broadest possible sense, or if you read involve unlawful activity in the way the commission wants to read it, you do swallow up everything. And I think that's what really the district court was driven by in recognizing this just can't be right. Your Honor asked about the express preemption, the pensions, the bucket shop laws. So it's not in any of the briefing because we looked at it and concluded it doesn't apply, but it is sort of confusing. So my understanding of that provision is that it deals with transactions that are not on a regulated exchange, but that are carved out by other parts of the statute. So it talks about excluded from the act. So that's why nobody talks about it. Permitted unregulated? In other words, there are certain situations where the commission can authorize off exchange stuff to happen, even though generally speaking, the rule is if you're going to trade these, it has to be on a regulated exchange. The commission is allowed to sort of carves it out. Then this express preemption provision says the state law doesn't apply, but that's not the preemption rule that we relied on, that the commission relied on, that anyone discussed in the order or the briefs up below. When you said that preempts bucket shop laws, what you're saying now is that more precisely, that preempts bucket shop laws as applied to this activity that might be subject to a carve out, that the CFTC is effectively blessing. Right. And that's why it's not really relevant. It seems like there's a sort of a structural preemption argument also, and I'd be interested in your thoughts on it. The very notion, so the bucket shop law is problematic, as you say, because states, some states still have them. And if by, if we read involved to say that trading on things, that if a state law outlaws certain trading, then similar trading is what the country of state law refers to, that that's going to make the, give the commission the ability to review every event contract. Right. And, but nobody thinks that this, and I know this sort of cuts both ways, your argument is, and nobody thinks of that. Right. Yes, exactly. Therefore, you can't read this language as involved points to a trade that amounts to activity unlawful under state law. It has to be trades of event contracts, the underlying of which is activity unlawful under state. That's what relates to your view. But I guess once you put the bucket shop off the table, which I think the very structure of the statute effectively does, then it seems to me, it's open to say actually what Congress is worried about is state's regulation of things like betting on elections and gambling. And so if the state has done the work of narrowing down what kinds of gambling it thinks are, is unlawful, what kinds of, you know. Yeah, I understand, the question, I just don't understand how we can take it off the table, consistent with the Texas statute, other than through our interpretation. Well, but interpretation involves looking at words and dictionaries and meaning. Right. And also. Context. Really uncontroversially looking at the structure of the statute, and the statute lists a bunch of things that are, none of which would be necessary if the first one gave CFTC authority to do everything that could conceivably be an arrest. Right. So we offer an interpretation of the statute that avoids that problem. Only because you read the, and the first. They're involved. I mean, I understand gambling has a similar. Yeah. Gaming has a similar problem, but the first category. Yeah. Only has that problem because of the bucket shop. Yeah, I agree. I agree. But the problem is, look, if Congress wants to say any unlawful activity, any activity unlawful under state law, but for the bucket shop laws, then I would understand the point. And Congress did refer to the bucket shop laws elsewhere in the act. So it's not like they didn't know that these laws are out there. They didn't say that. They said any state law. And again, I think the natural reading of that, that again, aligns it with the terrorism, war, and assassination. Is that it's the underlying. Is that it relates to the underlying. So I think you have a problem with your underlying, with looking at all these enumerated categories as exclusively dealing with the underlying. If you, if you look at enumerated category six, right? So category six gives the commission residual power to define additional categories of activities subject to public interest review. Right. You read, your client reads category six as this has, I mean, this is bizarre, right? As assigning to this commission, the threshold decision of which activities in the world, not which activities on the market they regulate, but which activities in the world are contrary to the public interest. That can't be right. Let me say a couple of things about that, because I had a feeling your honor might ask this question. So first of all, I'll just say six is not an issue. And we actually haven't taken a position on six. Just as we push them on. Your reading has to make sense. I agree. But what I would say is whatever we think about six, the point about one holds. So I just, we don't, I don't want to lose sight of that. Like, even if we think, oh, six is just, it's a, it's different from the others because it's this residual thing and they're getting at something else. You know, that doesn't really take away from our point that with respect to the unlawful activity, it's got to be referring to the other way. But let me go to the merits of it. I was thinking like, what is an example of something Congress could say is similar in that it is contrary to the public interest and in a way that is similar to war, terrorism, assassination. So one example I came up with is natural disasters. So I think the commission could say, but natural disasters are similar to war and assassination and terrorism. And they're contrary to public interest. And you know what, we don't want people trading contracts on whether the wildfires in LA are going to consume a certain number of acres by a certain date. That would be bad. That would be bad in the same way that trading on unlawful activity is bad and trading on war is bad. We don't want people to profit from it and we don't want to give people incentives to go commit arson. Like a strange example, given that so much of commodities trading generally was designed to hedge against natural disasters and everything on this list is a human agency. Yeah. And so maybe somebody could challenge it, but it seems like a strange example. But I do think that when you're dealing at least a disaster that can be affected by human behavior in a way like a fire, there would be a better argument for them to say, we don't want this. We think it's similar. It's just an example. I mean, look, they've never used this authority. So we're all sort of guessing about what it means, what its scope is, how they can use it. I don't think it's unusual to say, look, they want things that are similar to these other listed activities. The other listed activities are things that are, at least some of them, things that are bad. We don't want, we don't like terrorism. We don't like war. We don't want people trading on it. And so commission can say, look, there's other things like that, that, that are similar. The problem with your, can I just make one more point about this? The other problem, I think, with what your honor is suggesting about six is it would have the commission make the same inquiry twice because you get added to six. If you get added to six, you then get subjected to public interest. And if it does that, it gets to review those contracts to the side of trading them would violate the public interest. So it actually duplicates the step one and step two. You see it as a category. So just like, you know, it sort of makes a virtue of the fact that this threshold for a public interest review. So you can say, well, the category of, you know, trading on things that are contrary to state law is subject to public interest review. But it may be that there are certain things that are contrary to state law where we really want the information forcing to, you know, so the commission might look at that and say, yeah, we had review, but we, say, go ahead and offer that. So it is a different inquiry and it just makes much more sense to say the categories that empowers the commission to determine whether trading on certain events is contrary to the public interest or really, and I think you have pointed to something that's a little clumsy. One thing that's a little clumsy about the way the statute is written, which is it really should say to consider whether trading on certain events is likely to be, or raises in it, you know, a typical risk of being contrary to public interest, such that public interest review of individual such contracts is warranted. But when you look at this as whether it is better read as referring to CFTC making determinations about underlines or CFTC making determinations about whether it's contrary to public interest or might well be contrary to public interest to trade on certain events, to me, the latter is much more powerful. And if you agree, then I think you're back in hot water on involves. Well, I think what I would say is I'm not sure I agree that that is the better reading. To me, the better reading is one through six is looking at the underlying. And then if you pass one through six looks at the underlying, and if you get past that, then the public interest inquiry looks at the trading. So it's two different levels. But I would also say, look, six is a bit of a, I think for reasons that have come out in the discussion, six is a bit of a poor fit with the others. But again, I don't think that really detracts from the point that one, two, three, and four clearly go together in a way that makes sense and is aligned and doesn't walk into the overbreadth swallowing the rule problem. So I still think that's the better reading of one through four. And that's enough for purposes of this case. The issues with six are really not presented. Mr. Roth, I wanted to just understand something about the logic of your argument. So it seems to me for the CFTC to have the authority to do this, they need to prevail across the board, both on involved and on whether this involves gaming or something prohibited by state law. They need to show both. It seems to me to disprove their authority, you need to prevail, CalSHE needs to prevail on only one of those things because commission needs both. But when I asked you a question about this earlier, you suggested that really, you know, your interpretation relies on both parts. So for CalSHE to win, do you need to show both that your meaning of involved and your meaning of gaming or prohibited by state law is the correct one? There's different ways. It seems to me you conceded that you need to show more than I thought was necessary. I just think the easiest argument on gaming is that it needs to be a game and that doesn't get you into the whole issue. Right, so that's just one prong. Yeah, I think you're right. Your honor is correct. Involved would cut across and is enough to win across the board. It's sufficient, but I think the involved argument, it's tied much more closely to the unlawful activity prong than the gaming prong because gaming by its nature sort of can capture both levels. It's just doesn't seem to fit. The argument doesn't do as much on gaming. I just think the easier argument on gaming is the definition of gaming and the overbreadth of gambling as an alternative and the inability of the commission to draw a line that is rooted in any legal authority that would keep us in while also not covering the waterfront. But, you know, involved, I think you're honest. Correct. Involved. I think I'm not sure I understand why involved doesn't have the same intersection with gaming that it does. Like, why do you think that that connection is harder to? I'm not sure I fully understand that argument. It's just that gaming, as the district said, can cover both the playing of the game and the betting on the game. So if we've sort of can persuade the court that gaming requires a game, it doesn't really matter. Like they can say we should look at the at the whole transaction. It doesn't matter. There's still no game at the bottom. And so we still win on that. And you never really grapple with the involved issue. It just depends on what sequence the court considers the questions. I'm trying to present sort of what I pass on the two prongs. Well, I'll just, if there are no further questions, I'll just conclude by noting, you know, as I said at the outset, I know there are some people who don't think we should have these markets. And actually, there has been a bill introduced in Congress that would prohibit them. But as the law currently says, prohibit event contracts on elections. But as the law currently stands, they are permissible. The commission overreached in subjecting them to public interest review. And we think Judge Cobb's order should therefore be affirmed. But you do have the courage of your convictions that if it came to public interest review, that you would prohibit. Oh, yeah. And we made that argument robustly in the district court. It was argued orally and at the summary judgment hearing. But the court didn't have to reach it. This court has to reach it. Well, this court can't really reach it because it's not, hasn't been briefed. But no court needs to reach it because we prevailed. Meant to ask you earlier, I asked your friend on the other side, what, if any, impact excluded commodities and the definition of excluded commodities? Does it help inform the definition of either gaming or the definition of involved in your opinion? Well, I think it helps us in the sense that the definition of excluded commodity includes the events, right? The occurrences, extent of occurrences or contingencies. And our point is, that means by definition, an event contract involves staking money on a contingency. If that's the definition of an event contract, we can't possibly read gaming to give, to mean gambling in its broadest sense, because that would then fully overlap with the definition of event contract. And that would render the other prongs superfluous and also flip the statutory structure. Can you say that again? You said the excluded commodities refers to the event? So excluded commodity is defined to include the occurrence, extent of occurrence. I don't know the exact statute or phrase, but an occurrence, that is what the act defines as the excluded commodity, which is the type of commodity. And so a contract on an occurrence is subject, that's why we're subject to this whole regime in the first place. It's gotta be a contingent, it's gotta be an event all within the control of the parties as a contingent event. And if it's a contingent event, wagering on a contingent event is again, under the broadest definition of gambling, that is gambling. So that can't be what Congress is getting at with the special rule because that would sort of flip everything upside down. Yeah. I feel like a dog chasing its tail trying to figure out the statute because excluded commodity talks about, as you said, an occurrence, the extent of an occurrence or contingency beyond the control of the parties. So one way that I could gamble would be, I could go to local casino and play blackjack. And so I am actively playing in my skill at the game is going to impact whether I win money or lose money. But that's not something that is outside the control of the parties to the gambling transaction because I have some control and I'm a party to that transaction, right? But if I go to the casino and place a bet on playoff game, that event is outside of my control. So there's different ways that one can gamble. One might be seen as inside my control, out of my control. What does that do? Does that undermine the definition of gaming as gambling or does it support it or not? Your Honor, I don't, I'm not sure I have any insights into that. Nobody's really discussed the control of the parties element of the definition in this litigation from the beginning. And so how that kind of plays into it, I'm just, I'm not sure. I haven't thought it through. I don't think it's in, I don't think the commission thought it through. It certainly wasn't related to the district court's analysis or for present purposes, the commission's arguments about why the district court erred. So I'm not sure of the answer, but I'm not, I don't think the court necessarily has to get into that to understand. Well, I thought that we might because the whole definition in the special rule starts out that it's in connection with agreements, contracts, transactions, or swaps and excluding commodities. All of the things in Roman one through six are necessarily excluded commodities. Right. That's correct. And so, so if there's, if, if there's a definition of gaming that, that does not comport with outside the control of the party, transaction, then, then that definition can't be right. Right. So I think what you're saying is if, if you, if one was himself involved in a, a, say a poker game, okay. Then that might not be outside his control. And therefore a contract on that event would not be, would not be subject to this rule in the first place because it wouldn't be an excluded commodity. That, that might be right, but that just kind of takes the whole, that whole category of situations where you are yourself involved and have some control over it out of the analysis. And I don't know that that changes anything about the big picture arguments parties are making. Sorry if that's unsatisfying. Right. Thank you, your honors. Thank you. And we'll hear from Mr. Schwartz. All right. I think it's pretty clear at this point that other than our disagreement about what the word gaming means, they have no textual argument about the rest of the statute. It is about whether it would quote align better or if it would suit their policy purposes better if it read the way they said. So I think the court doesn't need to proceed any further on meaning of the word involved and its close connection to at least the illegal activity. What do you mean we don't need to proceed any further? Well, on what the word involved means they have no textual argument about that. I think the plain meaning of it. Right. And we, we lay out the textual argument about that. We agree that it to relate to, to entail, to have as a necessary future consequence. They agree with that. We agree it covers a variety of relationships and it has its ordinary meaning in, in section 5C. So thinking about whether it would align better if Congress had chosen some other words, I don't think the court needs to get there or ought to get there. Um, I am a little puzzled about some, two things that, that my friend, Mr. Roth said. He started out as they do by saying the commission announced a rule that any, any ball gambling is aiming within the meaning of 5C. I mean, that's their argument. It's not what we said. I don't take them to be saying that. I take them to be saying that the implications of your initial position in the order that gaming included, the gaming then gambled, which frankly, I think you're right. The gaming is gambling. But the problem with that is that it's, it swallows the whole decision in 2000 to generally, to no longer have sort of general public interest review. And so it's contrary to the project of the statute, which has these said dictionary definition of gaming is gambling. Therefore, these event contracts involve gaming. That would be, that would be a problem. But what the commission did, there's a list of the sources of the interpretation of gaming. I think it's pages eight and nine of the order. And it starts with the dictionary. It talks about state statutes that include betting on contests of others and their gambling definition. By the way, New Mexico, their statute says that betting on elections is gaming. So that is a pretty clear connection that at least supports the reasonableness of what the commission did here. And we look to state statutes because states are the almost exclusive regulators of gaming. So it was perfectly appropriate to do that. The only implications of the order are that if somebody comes to the commission with a contract on a contest, then the commission will either have to follow what it said here, that betting on contests of others is gaming, or we'll have to announce a change and explain why. If somebody comes with a contract that does not involve, and there's a footnote that says this, if there were a contract presented that did not involve betting on a contest of others, that would be different. So, I mean, it's a bit like a common law process in courts and SEC versus Chenery, or Chenery 2, as it's called, talks about this. What does the of others do for you? Is that just to distinguish it from their playing a game of playing a game for stakes because it's your own contest that you're betting on when you're playing for stakes? It just seems like it feels more gerrymandered when you say a contest of others as opposed to just a contest. Right now, I think it's as Mr. Roth said that if he and I, to give another example, he and I decide to play basketball for $50, that's not what we're talking about here. And the state statutes use the word contest of others, I think for precisely that reason. I don't mean to sweep into the anti-gambling laws, something that Mr. Roth might bet me on in terms of feats of strength or something like that. And in terms of what the word contest means, I think I heard him to say that contests other than sporting events are not within the scope of state gambling laws, which I find remarkable. I think the gaming commissions would be surprised to hear that. The Washington State Gambling Commission has put out a statement expressing near outrage, I think, the fact that what was illegal betting on elections is now available across the United States there. I don't think it's tenable to say that, well, if what you're offering is a bet on the presidential election, that's not covered by state law. Go ahead. And indeed, I mean, the numbers for many years, that was really kind of the primary anti-gambling enforcement of local officials, you know, used to call it policy, but it's a contest or that's a betting that doesn't involve sports, but that's always been illegal and, you know, regulated by states, right? Right. And if you want to list a new bet, offer a new bet at your casino, typically you have to go to the State Gaming Commission and get their approval to put it on there. I don't think it's accurate to say that these types of bets, because they're not on games, are outside the jurisdiction of the state regulators. And again, we're not applying state statutes as a whole, we're just looking to them for some guidance on what gaming means, because it's their business, typically. Are you making a preemption argument? Are you making an argument that the special rule preempts bucket shop laws, but not state laws that prevent betting on elections? No, I don't think we are. I don't think we are making that argument. I think the argument we're making about the bucket shop laws is, number one, the statute elsewhere deals with bucket shop laws. It's the, I think your Honor commented, that seems to be the kind of whole overriding, and it is the motivating force of futures regulation, right? So... It doesn't deal with them by the term bucket shop laws expressly, but just structurally, right? Yes. I mean, the reason that Congress preempted the application of state law regarding online, excuse me, on exchange trading is because there was a national interest in hedging and price discovery, which we contend is not served by these contracts. But as Mr. Roth said, it's a question for another day. They wanted to have this act. It's important to have derivatives where you can hedge against risks and where prices can be formed and disseminated. So I think that is, the bucket shop laws are structurally tied up in the rest of the statute. That's number one. But number two is that the commission did not have occasion to, and should not, take it on its own initiative to examine hypothetical contracts about an uncertain time in the future with an unknown legal landscape about what might be legal or illegal under state law. So even if we were talking about state laws here, there is no way for the commission to know what at some future date will be outlawed by the states. The way this would come up is somebody... But the commission has argued that the reasoning of this adjudication would apply in a future case. You've said that in this argument. Right. Yes, it would. It would. But if the facts are different in the future, then that would be the distinction between this case and others. So I think what we've said can't be... You can't really try to have it both ways. You can announce a new rule in an adjudication, or you can decide in a future adjudication to discard that rule. No, I don't think so. In fact, no, I don't think we're trying to... Respectfully, I don't think we're trying to have it both ways. I think, in fact, what we did here is very, very narrow. We decided the case on the facts before us, and it is only the facts before us just like a court would serve as precedential for other cases. Let's see here. With the court's indulgence, I will see if there's anything else that I wanted to bring up. No, I will just conclude by saying to the extent that there is a textual argument on one side and no textual argument on the other side, particularly in light of a major intrusion on state election law here, the court should not look at the statute in a way that runs counter to the text and apply it to this case. I think even if it were ambiguous, the court would have to be absolutely sure. I think when the text cuts against the interpretation that my friends are asking for, I don't think it's defensible to read the statute that way. Thank you, Mr. Schwartz. Thank you. The case is submitted.
judges: Millett; Pillard; Pillard; Wilkins; Rao; Pan